707 So.2d 1158 (1998)
Juan A. GARCIA, Jr.; Juan A. Garcia and Barbara Garcia, as the natural parents of Juan Garcia, Jr.; Juan A. Garcia, Individually, and Barbara Garcia, Individually, Appellants,
v.
The STATE of Florida, DEPARTMENT OF NATURAL RESOURCES, n/k/a Department of Environmental Protection, Appellee.
No. 96-3588.
District Court of Appeal of Florida, Third District.
February 25, 1998.
Rehearing Denied April 22, 1998.
*1159 Needle, Gallagher & Areces, Miami; Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin and Joel D. Eaton, Miami, for appellants.
Hermellee & Stieglitz and Bruce G. Hermellee and Esperanza V. Cervantes, Miami; Sarah Helene Sharp, Jacksonville, for appellee.
Before NESBITT, GODERICH and GREEN, JJ.
NESBITT, Judge.
The issue in this appeal is whether the State has a duty of care towards swimmers at a public beach, where that beach is state-owned, but is controlled and operated by a municipality in accordance with a management agreement between the State and the municipality. Because we find that the duty of care owed by owners of property, including owners of bodies of water, cannot be delegated, we hold that the State owed a duty of care to swimmers at the state-owned, municipality-controlled beach involved in this case. Therefore, we reverse the summary judgment entered in favor of the State, which dismissed the State agency from this personal injury lawsuit.
On February 1, 1989, Juan A. Garcia, Jr., (Garcia) was seriously injured when he dove into the Atlantic Ocean along the "South Beach" area of Miami Beach. He struck his head on debris on the ocean bottom which had allegedly been left there after the demolition of the South Beach pier. His injuries rendered him quadriplegic. In the ensuing tort suit, Garcia and his parents sued the contractors involved in the pier demolition, the City of Miami Beach (City), Metro Dade County (n/k/a Miami Dade County), and the State Department of Natural Resources (n/ k/a Department of Environmental Protection) (State).
There are two issues of material fact not in dispute between the State and Garcia(1) that the State owns the beach area in question; and (2) that the State never formally designated South Beach as a public swimming area nor did the State ever operate, maintain or control South Beach as a swimming area.
The State moved for summary judgment below on the alternative grounds that (1) since the State had never formally designated the beach in question as a public swimming area, it had no duty of care pursuant to its ownership of the beach and the adjacent submerged lands; and (2) even if the State did owe such a duty, it had delegated that duty in its entirety to the City pursuant to a written management agreement between the State and the City concerning the beach and waters of South Beach. The trial court granted summary judgment to the State. Because we find that neither of the State's contentions has merit, we reverse.
The test for whether or not liability may exist for the owner of a body of water is not, as the State suggests, whether or not that body of water has been formally designated as a public swimming area. Rather, any body of water held out to be a public swimming area and/or commonly used by the public as a swimming area may give rise to liability for its owner, even if that area was not formally designated as a public swimming area. See Andrews v. Department of Natural Resources, 557 So.2d 85, 88-89 (Fla. 2d DCA 1990); but cf., Warren v. Palm Beach County, 528 So.2d 413 (Fla. 4th DCA 1988).
In the instant case, although South Beach is not formally designated by the State as a public swimming area, it is held out to be a public swimming area by the City and is, in fact, used as a public swimming area. We disagree with the State's argument that since it is the City, and not the State, that holds South Beach out as a public swimming area, the State can avoid liability for any breach of the duty of care. The management agreement demonstrates that the State was aware of and, in fact, anticipated that the City would operate South Beach as a public swimming area.
Despite the fact that it was the City, and not the State, that maintained, operated and controlled South Beach as a public swimming area, the State as the owner of South Beach remained responsibleand therefore liable. This is because a property owner's duty of care towards invitees is a nondelegable duty. See Goldin v. Lipkind, 49 So.2d 539, 541 (Fla.1950); U.S. Security *1160 Serv. Corp. v. Ramada Inn, Inc., 665 So.2d 268, 270 (Fla. 3d DCA 1995); W. Page Keeton et al., Prosser & Keeton on The Law of Torts, § 71, at 511-12 (5th ed.1984). The management agreement between the City and the State, while delegating the operation of the beach to the City, could not delegate the ultimate responsibility to provide a duty of care and, thus, could not absolve the State of liability as a matter of law.
Simply, the performance of a duty may be delegated, but the actual responsibility for the duty may not. See Mortgage Guarantee Ins. Corp. v. Stewart, 427 So.2d 776, 780 (Fla. 3d DCA 1983); Atlantic Coast Dev. Corp. v. Napoleon Steel Contractors, 385 So.2d 676, 679 (Fla. 3d DCA 1980). This is true even where, as here, there was no allegation that the State either caused or knew of the dangerous condition which resulted in Garcia's injury and where, as here, it was alleged that the City and its contractors were the actual wrongdoers through their negligent failure to either properly remove the pier debris from the water or to warn the public of the danger from that debris.
The State argues that its decision to permit the City to operate South Beach was a planning level decision, protected from suit by the sovereign immunity statute. Though we agree that the decision to enter into the management agreement granting control of the beach to the City was a planning level decision, the duty implicit in property ownershipthe duty of care towards inviteesis a common law, operational level duty which waives the State's sovereign immunity. See Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912, 917 (Fla.1985). In other words, although a discretionary, planning level decision to permit the City to operate South Beach was made, the State retained the common law duty to operate the beach and its swimming area safely. See Butler v. Sarasota County, 501 So.2d 579, 579-80 (Fla.1986), citing Avallone v. Board of County Commissioners of Citrus County, 493 So.2d 1002, 1005 (Fla.1986). This duty exists at the operational level. Id. The duty of care owed by the State is the same as the duty owed by a private owner with regard to operating (or permitting another to operate) a public swimming area on its propertythat is, the duty to operate that beach and swimming area safely (or to see that it is operated safely). See § 768.28(5), Fla. Stat. (1995); Avallone, 493 So.2d at 1005.
Finally, we reject the State's assertion that the above-stated imposition of liability creates an intolerable financial burden on the State which, we acknowledge, "owns" or holds title to 682 miles of Florida beaches and adjacent submerged lands in trust for Florida citizens. We realize that the State cannot practically be expected to be the insurer of safety for every person swimming at each of these beaches where, as here, the beaches are located within and controlled by other government entities. Nonetheless, the liability burden is not as tremendous as the State seems to believe. First, as our decision explains, the only beaches for which the State could possibly face liability for a breach of the duty of care are those beaches held out as or actually used as public swimming beaches. Further, the State may protect itself from financial lossesas it did here by including an indemnification clause in its beach management agreements with other government entities, requiring these entities to indemnify the State in the event the State is found liable solely due to its ownership of the beach.
As discussed above, we find that the State did have a duty of care towards invitees such as Garcia who were using South Beach for its intended purpose, i.e., swimming. This duty arose from the State's ownership of the beach and its knowledge that it was being operated by the City as a public swimming area. The duty was not and could not be delegated to the City. Therefore, we reverse the summary judgment below and remand for a trial on the merits.